IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY and
ALLSTATE INDEMNITY COMPANY                                    PLAINTIFFS


v.                              NO. 6:19-CV-6037


SHRI KRISHNA, INC.; KALPA MODI;
VIPUL MODI; and CSG ENTERPRISES, INC.                        DEFENDANTS


**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.    INTRODUCTION

Before the court is a motion for summary judgment (ECF No. 33) filed by the Plaintiffs,

Allstate Vehicle and Property Insurance Company ("AVPIC") and Allstate Indemnity Company

("AIC") (collectively, the "Allstate Plaintiffs").  The Allstate Plaintiffs ask the court to declare

they have no duty to defend or indemnify Shri Krishna, Inc., Vipul Modi, and Kalpa Modi, in a

state court lawsuit under the terms of a homeowners policy or an umbrella policy.  Shri Krishna

and the Modis have filed responses opposing the motion (ECF Nos. 40, 43, 46), and the Allstate

Plaintiffs have filed a reply.  (ECF No. 49).  The motion is ready for consideration.  For the

reasons that follow, the motion for summary judgment will be GRANTED.

## II.    BACKGROUND

### A.  The Underlying Lawsuit

In January 2016, CSG Enterprises, Inc., leased a commercial building to operate a fitness

center.  CSG leased the premises from Shri Krishna, Inc., and the leased premises were located at

150 Peters Point, Hot Springs, Arkansas 71913.  Vipul Modi signed the lease on Shri Krishna's

behalf.  During this time, Vipul and his wife, Kalpa, were the sole shareholders of Shri Krishna,

Inc.  Under the lease, Shri Krishna had a duty to maintain the exterior portion of the premises, including the roof.  The lease contemplated defective roof conditions, and it placed an obligation on Shri Krishna to repair defects.

In the spring of 2016, CSG alleges it noticed leaks and notified Vipul of the need to repair the roof.  According to CSG, Vipul Modi subsequently communicated the repairs had taken place.  However, CSG alleges the leaks persisted and that it continued to advise Vipul about the need for repairs.  The roof collapsed on March 24, 2017, causing CSG to vacate the property and cease its business operations.  CSG sued Shri Krishna and the Modis in Garland County Circuit Court.  CSG confined its claims to breach of the contract and fraud, and it did not sue for damages deriving from the collapse of the roof.  For the breach of contract claim, CSG alleges the Modis and Shri Krishna breached their obligations as landlords by failing to repair the roof.  The fraud claim is based on the allegation that Vipul Modi provided misrepresentations insisting the repairs had occurred.  In addition to its claims for damages, CSG requests the state court to pierce Shri Krishna's corporate veil and hold Vipul and Kalpa as jointly and severally liable for all damages owed to CSG.

**B.  Complaint for Declaratory Relief and Motion for Summary Judgment**

Following the filing of CSG's lawsuit, the Modis tendered the suit to the Allstate Plaintiffs.  The Allstate Plaintiffs responded by retaining counsel to represent the Modis pursuant to a full reservation of rights.[1]  During the time the roof collapsed, Vipul and Kalpa were insured under policies issued by the Allstate Plaintiffs, which consisted of a homeowners policy issued by AVPIC and an umbrella policy issued by AIC.  Shri Krishna was not listed as an insured

---

[1] The underlying lawsuit remains active and ongoing.  The Modis are represented by counsel provided by the Allstate Plaintiffs, and Shri Krishna is represented by separate counsel.

under these policies.  Furthermore, the insured premises were located at a different address than the premises at issue in the underlying lawsuit, i.e., the building leased by CSG.

The Allstate Plaintiffs filed the current action, seeking a declaration there was no duty to defend or indemnify in the underlying lawsuit.  In their motion for summary judgment, the Allstate Plaintiffs contend they owe no duties to Shri Krishna because Shri Krishna is not named as an insured in the policies; CSG's claims fail to constitute an occurrence providing coverage under the policies; and CSG's claims are excluded by the terms of the policies.  In response, the Modis and Shri Krishna emphasize that Vipul and Kalpa were not parties to CSG's lease.  They suggest summary judgment is premature because this fact has not been developed in the underlying lawsuit.  However, the duty to defend is ordinarily determined by the allegations in the pleadings, irrespective of their validity.  *Cincinnati Ins. Companies v. Collier Landholdings, LLC*, 614 F. Supp. 2d 960, 968 (W.D. Ark. 2009).  The Modis remain as defendants in the underlying lawsuit.  Thus, it is appropriate for the Court to rule on the summary judgment motion and determine what duties, if any, are owed by the Plaintiffs.

### C.  The Homeowners Policy

The Homeowners Policy was issued by AVPIC, and Vipul and Kalpa Modi are listed as the insureds.  The insured premises consist of a property located at 219 Peters Point, Hot Springs, Arkansas 71913.  Regarding losses covered and the duty to defend, the policy contains the following language:

### Section II—Family Liability And Guest Medical Protection
### Family Liability Protection-Coverage X

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of … **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

> **We** may investigate or settle any claim or suit for covered damages against an **insured person**.  If an **insured person** is sued for these damages, **we** will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.  **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

(ECF No. 2-2, Homeowners Policy at 37) (emphasis in original).

The policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."  (*Id*. at 19).  The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in … **property damage**."  (*Id*. at 18-19) (emphasis in original).

Furthermore, the Homeowners Policy specifies and describes the following relevant exclusions:

> **Losses We Do Not Cover Under Coverage X:**
> 1. **We** do not cover any … **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.**  This exclusion applies even if:
>    a) such **insured person** lacks the mental capacity to govern his or her conduct;
>    b) such … **property damage** is of a different kind or degree than intended or reasonably expected; or
>    c) such … **property damage** is sustained by a different person than intended or reasonably expected.
> …
>
> 12. **We** do not cover … **property damage** arising out of the past or present **business** activities of an **insured person.**[2]
>
> …
>
> 15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

---

[2] The term "business" includes "the rental or holding for rental of property by an insured person."  (ECF No. 2-2, Homeowners Policy at 18).  The policy specifies when rental of the premises is not considered a business, but these exceptions do not extend to the leasing of the property for commercial purposes.

(*Id*. at 37-38) (emphasis in original).

**D.  The Umbrella Policy**

The Umbrella Policy was issued by AIC.  Vipul and Kalpa Modi are listed as the

policyholders.  The policy provides excess liability coverage for property damage under Sections

1 and 2 of Coverage XL.[3]  Regarding AIC's duty to defend, Coverage XL states:

### *DEFENSE WE WILL PROVIDE*

**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  We will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing the Required Underwriting Insurance or any other liability insurance, **we** maintain the right to join in the defense of any claim or suit which may require **us** to pay.

If the **insured person** fails to maintain the Required Underlying Insurance, **we** will not defend any **insured person** for any amount of damages falling within the Required Underlying Insurance limits.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons. In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate.

(ECF No. 2-3, Umbrella Policy at 17).

Under the provision entitled "Required Underlying Insurance" the policy states:

**You** must maintain the Required Underlying Insurance policy.  **You** must maintain the Required Underlying Insurance at or above the limits as shown on the Policy Declarations ·Required Underlying Limit· at all times for each liability exposure any **insured person** has.  If **you** fail to maintain the Required Underlying Insurance policy applicable to the **occurrence**, there will be no coverage for any **insured**

---

[3] The Allstate Plaintiffs suggest Coverage XP is relevant to determining their duty to defend, but Coverage XP only applies to damages to which the insured "becomes legally obligated to pay because of **personal injury**."  (ECF No. 2-3, Umbrella Policy at 18) (emphasis in original).  CSG's complaint does not allege a personal injury under the terms of the policy.  A "personal injury" is defined to include "false arrest; false imprisonment; wrongful detention; wrongful entry; invasion of rights of occupancy; libel; slander; humiliation; defamation of character; [and] invasion of rights of privacy."  (*Id*. at 10).

> **person** under this policy until the damages exceed the Required Underlying
> Insurance limit for that exposure.  If the underlying insurance applicable to
> the **occurrence** does not provide at least the limits required under this section of this
> policy, **you** will be responsible for the damages up to the Required Underlying
> Insurance amounts.

(*Id*. at 12).

The coverage provision in Section 1 states:

> Under Section 1 of the policy, **we** will pay damages which an **insured person**
> becomes legally obligated to pay because of … **property damage** arising out of an
> **occurrence** that is both a loss **we** cover under **Excess Liability Insurance —
> Bodily Injury and Property Damage — Section 1** of this policy and a covered
> loss under **your** Required Underlying Insurance Policy.

(*Id*. at 13).  "Property damage" is defined as "physical harm to or destruction of tangible

property, including loss of its use resulting from such physical harm or destruction."  (*Id*.

at 10).  An "occurrence" means "an accident during the policy period, including continued

and repeated exposure to substantially the same general harmful conditions during the

policy period, resulting in … **property damage**."  (*Id*.) (emphasis in original).

Section 1 only covers occurrences arising out of: (1) the personal activities of an

insured person; (2) volunteer civic services in which an insured person "performs without

pay, for a not-for-profit corporation and which is not a function of that person's **business**";

and (3) the duties of the insured person's domestic employees "who are not subject to

Workers Compensation laws."  (*Id*.).[4]  Section 1 Contains no exclusions.

As for Section 2 of Coverage XL, the provision states AIC "will pay damages in

which an **insured person** becomes legally obligated to pay because of … **property

damage**" arising from either:

---

[4] "Business" is defined to include "the rental or holding for rental of any property by an **insured person**."  (ECF No.
2-3, Umbrella Policy at 9) (emphasis in original).  Similar to the Homeowners Policy, the definition of business
contains several exceptions, but none of the exceptions encompass leasing the insured premises for commercial
purposes.

1. a covered **occurrence** for which Required Underlying Insurance is not required by this policy; or

2. a covered **occurrence** for which **you** are required by this policy to maintain Required Underlying Insurance but there is no Required Underlying Insurance in effect at the time of the **occurrence.**

(*Id*. at 14).[5]

Section 2 excludes coverage for:

1. any **occurrence** covered under **Excess Liability Insurance — Bodily Injury and Property Damage — Section 1** or under **Excess Liability Insurance —Personal Injury.**

2. any **occurrence** arising out of any act or failure to act by any person in performing functions of that person's **business.**

3. any **occurrence** arising out of a **business** or **business property**.[6]

…

13. **property damage** intended by, or which may reasonably be expected to result from the intentional … acts or omissions of, any **insured person**…. This exclusion applies even if:

   a) such **insured person** lacks the mental capacity to govern his or her conduct.

   b) such … **property damage** is of a different kind or degree than that intended or reasonably expected; or

   c) such … **property damage** is sustained by a different person than intended or reasonably expected.

(*Id*. at 14-15).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only when there are no genuine issues of material

fact to be litigated, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV.

---

[5] The terms in Section 2, such as "property," "occurrence," or "business," have the same definitions as the terms in Section 1.
[6] The term "business property" means "any property on which a **business** is conducted."  (ECF No. 2-3, Umbrella Policy at 9) (emphasis in original).

P. 56(a).  When a court reviews a motion for summary judgment, it must determine: (1) whether any genuine issues of material fact exist; and if none, (2) whether the moving party is entitled to judgment as a matter of law.  *Id*.  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A dispute is genuine if it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56(c)).  Once this demonstration is made, the burden of production then shifts to the nonmoving party.  *Id*. at 324 (citing FED. R. CIV. P. 56(e)).  The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [to] designate 'specific facts showing there is a genuine issue for trial.'"  *Id*.  When the record cannot lead a rational trier of fact to find for the nonmoving party, there is not genuine issue for trial.  *Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986).

## IV.    DISCUSSION

In determining an insurer's duty to defend, the Court must examine the factual allegations involved in the underlying lawsuit.  *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 175-76, 61 S.W.3d 807, 812 (2001).  The duty to defend arises when there is a possibility that the injury or damage alleged may fall within the coverage of the policy.  *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 2012 Ark. 247, at 9, 411 S.W.3d 184, 190.  "When there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend."  *Id*.  Thus, to determine whether the duty to defend arises, the Court must evaluate the pleadings, irrespective of their validity, and the relevant insurance policies.

The standard rules of contract interpretation apply when interpreting an insurance policy. *Foster v. Farm Bureau Mut. Ins. Co.*, 71 Ark. App. 132, 133, 27 S.W.3d 464, 465 (2000).  If the terms of an insurance policy are unambiguous, their meaning becomes a question of law.  *Moore v. Columbia Mut. Casualty Ins. Co.*, 36 Ark. App. 226, 228, 821 S.W.2d 59 (1991).  In such a circumstance, the terms of the policy should be applied without resorting to construction techniques, and the Court should give effect to the policy's plain and ordinary meaning.  *Essex Ins. Co. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2007); *Green v. Farmers Ins. Co.*, 57 F.Supp.2d 729, 732 (W.D. Ark. 1999).

But if the language of a policy is ambiguous, the policy will be construed liberally in favor of the insured and strictly against the insurer.  *Anderson Gas & Propane, Inc. v. Westport Ins. Corp.*, 84 Ark. App. 310, 315, 140 S.W.3d 504, 507 (2004).  An ambiguity exists when there is doubt or uncertainty as to the meaning of the contract and when the terms are susceptible to more than one reasonable interpretation.  *Ison v. Southern Farm Bureau Cas. Co.*, 93 Ark. App. 502, 509, 221 S.W.3d 373, 379 (2006).  The initial determination of whether or not a contract is ambiguous rests with the court.  *Moore*, 36 Ark. App. at 228, 821 S.W.2d at 60.  If an ambiguity exists, the meaning of the contract becomes a question of fact for the fact-finder.  *Anderson*, 84 Ark. App. at 315, 140 S.W.3d at 507.

Upon review of the policies, the Court finds that the terms conferring initial grants of coverage and the applicable exclusions are unambiguous.  The policies grant coverage when the damages sought fit within the definition of "property damage" arising out of an "occurrence." Both policies limit the definition of an "occurrence" to an "accident."  The policies do not define the term "accident," but according to the Arkansas Supreme Court, an "accident" is "an event that takes place without one's foresight or expectation-an event that proceeds from an unknown

9

cause, or is an unusual effect of a known cause, and therefore not expected." *United States Fidelity & Guar. Co. v. Continental Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003).

CSG has confined their claims to causes of action for breach of contract and fraud. Even if the leased premises were insured under the policies, there is no possibility of coverage as to CSG's claims. As to the fraud claim, CSG alleges repeated promises were made to repair the roof, but the repairs failed to occur. Fraud is an intentional act, and an accident happens without intention. *See Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, at 8, 432 S.W.3d 117, 123 (listing intent an element of fraud); Ark. Model Jury Instr., Civil AMI 2902 (same). Because the underlying policies only provide coverage for accidental conduct, fraud cannot constitute a basis for coverage. Thus, the Allstate Plaintiffs have no duty to defend against the fraud claim.

Likewise, the breach of contract claim fails to allege property damage resulting from an accident. To the extent that damages result from breach of the lease, the damages cannot be the result of "property damage." *See Murphy Oil Corp. v. Liberty Mutual Fire Ins. Co.*, No. 19-1140, 2020 WL 1921951, at *3 (8th Cir. Apr. 21, 2020) (applying Arkansas law) ("even if [a] breach of contract claim involves property damage, it does not change the nature of the claim into one for covered property damage."); *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998) (finding no duty to indemnify because damages were incurred "on account of" the breach of a lease agreement, rather than any property damage resulting from the insured's business operations). CSG's breach of contract claim alleges damages resulting from the failure to maintain contractual promises, as opposed to damages resulting from an accident. Because occurrences under the policies are confined to "accidents," there is no duty to defend against CSG's breach of contract claim.

Lastly, even if there is an initial grant of coverage, both the Homeowners Policy and the Umbrella Policy, Section 2 of Coverage XL, contain exclusions precluding coverage.[7]  The exclusions apply for two reasons.  First, the breach of contract claim derives from the alleged failure to uphold contractual obligations under a commercial lease.  The Homeowners Policy excludes any liability the insured person assumes arising from a contract or agreement.  Furthermore, both policies exclude coverage for property damage arising from the insured's business activities.  The policies define "business" to include the leasing of the premises.  Although the definitions of "business" contain several exceptions, none of the exceptions extend to a commercial lease.  Second, the fraud claim is premised on representations that the roof would be repaired.  Both policies preclude coverage from property damage arising from the intentional acts or omissions of the insured.  As mentioned above, fraud is an intentional act that does not constitute an accident under the polices.

Accordingly, there is no possibility of coverage under the policies as to CSG's claims. The Allstate Plaintiffs have no duty to provide a defense in the underlying lawsuit.

**V.      ORDER**

IT IS THEREFORE ORDERED that the Plaintiffs' motion for summary judgment (ECF No. 33) is GRANTED.  A separate judgment will be entered concurrently herewith.

IT IS SO ORDERED this 13th day of May, 2020.

*/s/ Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**

---

[7] Section 1 of the Umbrella Policy contains no exclusions, but coverage is determined, in part, by whether there is a covered loss under the Required Underlying Insurance Policy, i.e., the Homeowners Policy.